Tor Ekeland, Pro Hac Vice
tor@torekeland.com
Tor Ekeland, P.C.
195 Plymouth Street, 5th Floor
Brooklyn, NY 11201
Tel:  718-737-7264
Fax: 718-504-5147

Jason S. Leiderman, SBN 203336
jay@criminal-lawyer.me
Law Office of Jay Leiderman
5740 Ralston Street, Suite 300
Ventura, California 93003
Tel:  805-654-0200
Fax: 805-654-0280

*Pro Bono Attorneys for Defendant
Matthew Keys*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>　　　　　**Plaintiff,**<br>　　　v.<br>**MATTHEW KEYS,**<br>　　　　　**Defendant.** | 2:13-CR-00082-KJM |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HIS MOTIONS IN LIMINE**

## TABLE OF CONTENTS

**TABLE OF AUTHORITES**.................................................................................................**iii**
**INTRODUCTION** ........................................................................................................... **1**
**BACKGROUND** .............................................................................................................. **1**
**LEGAL STANDARD** ...................................................................................................... **2**
**ARGUMENT**................................................................................................................... **4**
   **I.**   **THE COURT SHOULD EXCLUDE THE GOVERNMENT'S LOSS NUMBERS** .. **4**
      **A.**   **The loss numbers are irrelevant, speculative, and unduly prejudicial** .................... **4**
      **B.**   **The loss numbers are impermissible opinion evidence** ............................................... **6**
   **II.**   **THE COURT SHOULD EXCLUDE THE "CANCERMAN EMAILS" BECAUSE THEY ARE IRRELEVANT AND PREJUDICAL**............................................................... **9**
   **III.**   **THE COURT SHOULD EXCLUDE ANY REFERENCE TO A PRIOR RESTRAINING ORDER AS PREJUDICIAL AND IRRELEVANT** ................................ **10**
   **IV.**   **IRC LOG FILES OBTAINED FROM DENNIS OWEN COLLINS CANNOT BE AUTHENTICATED AND ARE THEREFORE INADMISSIBLE** ................................... **12**
**CONCLUSION** ................................................................................................................... **13**

# TABLE OF AUTHORITES

**Cases**

*AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174 (E.D. Cal. 2010) ........................ 4, 9
*BHRAC, LLC v. Regency Car Rentals, LLC*, 2015 WL 3561671 (C.D. Cal. June 4, 2015) .......... 5
*Brodit v. Cabra,* 350 F.3d 985 (9th Cir.2003) ................................................................................ 2
*C & E Services, Inc. v. Ashland Inc.,* 539 F. Supp. 2d 316 (D.D.C. 2008) .................................... 3
*Farmers Ins. Exch. v. Steele Ins. Agency, Inc*., 2013 WL 3872950 (E.D. Cal. July 25, 2013) .. 4, 5
*Huddleston v. U.S.,* 485 U.S. 681 (1988)..................................................................................... 10
*Jonasson v. Lutheran Child & Family Services,* 115 F.3d 436 (7th Cir.1997) ............................. 2
*Luce v. U.S.,* 469 U.S. 38 (1984) ................................................................................................... 2
*New Show Studios LLC v. Needle*, 2014 WL 2988271 (C.D. Cal. June 30, 2014)........................ 5
*Old Chief v. U.S.*, 519 U.S. 172 (1997) ...................................................................................... 10
*Reeves v. Sanderson Plumbing Products,* 530 U.S. 133 (2000) .................................................... 3
*U.S. v. Bland*, 908 F.2d 471 (9th Cir. 1990) ................................................................................. 3
*U.S. v. Ellis*, 147 F.3d 1131 (9th Cir. 1998) ................................................................................. 3
*U.S. v. Layton*, 767 F.2d 549 (9th Cir. 1985)............................................................................... 3
*U.S. v. Rincon*, 28 F.3d 921 (9th Cir. 1994), cert denied 513 U.S. 1029 (1994) .......................... 3
*U.S. v. Westbrook*, 125 F.3d 996 (7th Cir. 1997)......................................................................... 3
*U.S. v. Black*, 767 F.2d 1334 (9th Cir. 1985)............................................................................. 12
*U.S. v. Hadley*, 918 F.2d 848 (9th Cir. 1990) ............................................................................ 10
*U. S. v. Heller*, 551 F.3d 1108 (9th Cir. 2009)............................................................................. 3
*U. S. v. Merino-Balderrama*, 146 F.3d 758 (1998).................................................................... 10
*U.S. v. Ramirez-Robles*, 386 F.3d 1234 (9th Cir. 2004) ............................................................ 11
*U.S. v. Tank*, 200 F.3d 627 (9th Cir. 2000)................................................................................ 12
*U.S. v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008) ....................................................................... 8
*U.S. v. Yagi*, 2013 WL 10570994 (N.D. Cal. Oct. 17, 2013)........................................................ 8

**Statutes**

18 U.S.C. § 1030............................................................................................................................ 2, 4
18 U.S.C. § 371............................................................................................................................... 2

**Rules**

Fed. R. Crim. P. 16 ........................................................................................................................ 7
Fed. R. Evid. 401 ........................................................................................................................... 3
Fed. R. Evid. 403 ..................................................................................................................... 3, 10
Fed. R. Evid. 404 ......................................................................................................................... 10
Fed. R. Evid. 701 ........................................................................................................................... 6
Fed. R. Evid. 702 ....................................................................................................................... 6, 7
Fed. R. Evid. 703 ........................................................................................................................... 7
Fed. R. Evid. 705 ........................................................................................................................... 7
Fed. R. Evid. 901 ......................................................................................................................... 12

# INTRODUCTION

Defendant Matthew Keys, through his pro bono counsel, moves to exclude the following evidence it expects the government to introduce at trial: 1) irrelevant, speculative, and prejudicial loss numbers unrelated to the alleged Computer Fraud and Abuse Act ("CFAA") charges; 2) all loss numbers because the government has not noticed any expert that can substantiate them; 3) irrelevant and prejudicial emails allegedly sent by the defendant that are unrelated to the alleged CFAA damage and that are also inadmissible under Federal Rule of Evidence 404(b); 4) irrelevant, prejudicial evidence of a 2008 restraining order against the Defendant; and 5) chat and server logs seized from the late Dennis Owen Collins, an unindicted third party, which cannot be authenticated.

# BACKGROUND

The charges in this case stem from edits to one paragraph of a story on the Los Angeles Times website on December 14, 2010. That day, using the Los Angeles Times/Tribune Company's content management system ("CMS"), the user "ngarcia" allegedly altered a paragraph of a latimes.com story.  The article's title and byline originally appeared as follows:

> **Pressure builds in House to pass tax-cut package**
>
> House Democratic leader Steny Hoyer sees 'very good things' in the tax-cut deal, which many representatives oppose.  But with the bill set to clear the Senate, reluctant House Democrats are feeling the heat to pass it.
> By Lisa Mascaro, Tribune Washington Bureau[1]

After the minor edits by ngarcia, the article's title and byline allegedly read:

---

[1] The original article is still available on the Los Angeles Times website, *see* Lisa Mascaro, *Pressure builds in house to pass tax-cut package*, http://articles.latimes.com/2010/dec/14/news/la-pn-hoyer-tax-vote-20101215 (last visited Sept. 9, 2015).

1    Memorandum in Support of Defendant's Motions in Limine

**Pressure builds in House to elect CHIPPY 1337**

> House Democratic leader Steny Hoyer sees 'very good things' in the deal cut which will see uber skid Chippy 1337 take his rightful place, as head of the Senate, reluctant House Democrats told to SUCK IT UP.
> By CHIPPYS NO 1 FAN, Tribune Washington Bureau[2]

The website administrators restored the original in less than an hour. For the foregoing, Mr. Keys has been charged with one count of conspiracy to violate the Computer Fraud and Abuse Act, in violation of 18 U.S.C. §§ 371 and 1030(a)(5)(A); one count of knowingly transmitting a code with the intent to cause damage to a protected computer in violation of 18 U.S.C. § 1030(a)(5)(A); and one count of attempt to transmit a code with the intent to cause damage to a protected computer in violation of 18 U.S.C. § 2 and 1030(a)(5)(A). For this he faces a maximum sentence of 25 years in jail, $750,000 in fines, 9 years of supervised release, and criminal forfeiture. *U.S. v. Keys*, Superseding Indictment, 2:13-CR-00082 (Dec. 4, 2014) (ECF # 44).

## LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. U.S.,* 469 U.S. 38, 40 n. 4, (1984). The Ninth Circuit has explained that motions in limine "allow parties to resolve evidentiary disputes ahead of trial, without first having to present potentially prejudicial evidence in front of a jury." *Brodit v. Cabra,* 350 F.3d 985, 1004–05 (9th Cir.2003) (citations omitted). Motions in limine are "an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child & Family Services,* 115 F.3d 436, 440 (7th Cir.1997).

---

[2] *See U.S. v. Keys*, Superseding Indictment, 2:13-CR-00082 (Dec. 4, 2014) (ECF # 44 at p. 4)

"[A] motion in limine should not be used to resolve factual disputes or weigh evidence," *C & E Services, Inc. v. Ashland Inc.,* 539 F. Supp. 2d 316, 323 (D.D.C. 2008), because that is the province of the jury. *See Reeves v. Sanderson Plumbing Products,* 530 U.S. 133, 150 (2000). Rather the motion in limine process should be used "to limit in advance testimony or evidence in a particular area." *U.S. v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).

The Federal Rules of Evidence require that for any evidence to be admitted it must be "relevant." Fed. R. Evid. 401. Evidence is irrelevant if there is "no connection between the evidence and the issues of the case or material facts at issue." *U.S. v. Westbrook*, 125 F.3d 996, 1008 (7th Cir. 1997). Additionally, even where evidence is found to be relevant, the relevancy of that evidence must be weighed against the potential for serious prejudice. Fed. R. of Evid. 403. The Rule 403 weighing process- balancing the probative value of the proffered evidence against its potential for unfair prejudice or confusion of issues- is primarily for the district court to perform. *U.S. v. Layton*, 767 F.2d 549, 553 (9th Cir. 1985); *U.S. v. Rincon*, 28 F.3d 921, 925 (9th Cir. 1994), cert denied 513 U.S. 1029 (1994).

The 9th Circuit is especially cautious about admitting potentially inflammatory evidence with little to no probative value. *See U.S. v. Ellis*, 147 F.3d 1131, 1136 (9th Cir. 1998) (reversing conviction of defendant charged with receiving and concealing stolen explosives because the improper admission of evidence of the destructive capability of the stolen explosives.); *U.S. v. Bland*, 908 F.2d 471, 474 (9th Cir. 1990), (holding details of murder inadmissible); *U.S. v. Layton*, 767 F.2d 549, 553 (9th Cir. 1985) (reversing conviction because of unduly prejudicial tape recordings of multiple suicides).

# ARGUMENT

## I. THE COURT SHOULD EXCLUDE THE GOVERNMENT'S LOSS NUMBERS

### A. THE LOSS NUMBERS ARE IRRELEVANT, SPECULATIVE, AND UNDULY PREJUDICIAL

The government will likely seek to use a document produced in discovery, or seek to introduce testimony related to the information in it, entitled "Valuation on time/disruption of business" (Attached as Exhibit A) to establish "loss" under the CFAA. The Court should bar introduction of this document and any testimony related to its contents. A significant portion of the entries in this document are categorically impermissible to show loss under the CFAA. As a result, these numbers should be excluded as they will only serve to confuse and prejudice an accurate valuation of any alleged loss caused by the alleged CFAA damage.

The CFAA defines "damage" as "any impairment to the integrity or availability of *data, a program, a system, or information*." 18 U.S.C. § 1030(e)(8) (emphasis added). The statute defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages *incurred because of interruption of service*." 18 U.S.C. § 1030(e)(11) (emphasis added). Thus, damage under the CFAA is not the same as loss under the CFAA.

To allege loss under the CFAA "plaintiffs must identify impairment of or damage to the computer system that was accessed without authorization … costs not related to computer impairment or computer damages are not compensable under the CFAA." *Farmers Ins. Exch. v. Steele Ins. Agency, Inc*., No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *21-22 (E.D. Cal. July 25, 2013); *see also AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d 1174, 1184 (E.D. Cal. 2010) (finding clear congressional intent to limit loss to "the traditional computer 'hacker'

scenario—where the hacker deletes information, infects computers, or crashes networks."); *New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS, 2014 WL 2988271, at *7 (C.D. Cal. June 30, 2014) ("Subsequent economic damage unrelated to the computer itself does not constitute loss."); *Sprint Solutions Inc. v. Pac. Cellupage Inc.*, No. 2:13-CV-07862-CAS, 2014 WL 3715122, at *6 (C.D. Cal. July 21, 2014) ("business loss . . . is not a cognizable loss under the CFAA.").

The court in *Farmers Ins. Exch.* held inadmissible "harm in the form of lost present and future business revenue" in a calculation of CFAA loss where the harm was not directly related to either interruption or damage to a computer system. No. 2:13-CV-00784-MCE, 2013 WL 3872950, at *21-22 (E.D. Cal. July 25, 2013). Additionally, the court in *BHRAC, LLC v. Regency Car Rentals, LLC*, No. CV 15-865-GHK MANX, 2015 WL 3561671, at *3 (C.D. Cal. June 4, 2015) excluded business losses that resulted from theft of information that allowed the defendant to poach plaintiff's customers. The *BHRAC* court reasoned that the lost revenue was "not the sort of injury for which the CFAA provides a remedy" as it was not caused by "an interruption of service" but only the misuse or misappropriation of information. *See id.* Thus, under the CFAA, the vast majority, if not all, of the government's alleged loss is not cognizable.

At minimum, the following entries in Exhibit A are unrelated to any interruption of or damage to the Tribune Company's (the parent company of the Los Angeles Times) computer systems, and refer only to business losses that occurred separately from any alleged CFAA damage, and therefore any testimony or evidence related to them should be excluded:

- Financial impact of a television show rating decline (not charged in the Indictment), estimate at **$409,612.00**
- Financial impact of database loss (not charged in the Indictment), current revenues loss estimated at **$25,000** and forward revenues estimated at **$250,000**

- Greenlinks Database loss (not charged in the Indictment), iPad Contest, estimated at **$15,000**
- Greenlinks Database loss (not charged in the Indictment), "Database impact" estimated at **$200,000**

Total loss not cognizable under the CFAA: **$899,612**

These purported losses are not only irrelevant to either "loss" or "damage" as defined by the CFAA, they also render the document highly prejudicial. They constitute 96 percent of the total loss figures sought to be introduced by the government. As these economic loss entries comprise the overwhelming majority of the government's claimed losses, their admission would unavoidably distract, confuse, and prejudice any accurate determination of either loss or damage as defined by the CFAA. As a result, they at minimum must be excluded.

**B. THE LOSS NUMBERS ARE IMPERMISSIBLE OPINION EVIDENCE**

Additionally, all the loss figures contained in Exhibit A, as well as all the loss numbers that the government is going to allege in this case, require an opinion "based on scientific, technical, or other specialized knowledge within the scope of [Fed. R. Evid.] 702" and their introduction would require financial and statistical expert or experts. *See* Fed. R. Evid. 701. The government has noticed no such expert to the defense. To introduce the loss estimates as lay witness testimony they must be "rationally based on the witness's perception." Fed. R. Evid. 701. Neither the losses contained in Exhibit A nor any of the government's other alleged losses can possibly be substantiated by any of the government's lay witnesses as CFAA losses.

For example, on page 2 of Exhibit A, the government alleges that the CFAA violations caused a .1 decline[3] in morning news t.v. show ratings[4], a .4 decline in early news ratings, and a

---

[3] It is unclear from the document what these decimal numbers represent. They appear to be percentages (e.g. ".4" would represent 0.4%), but the document does not clarify them or provide any context for how they were calculated or created.

[4] The document refers to "News rating A2554" in discussing the decimal increases and decreases. On information and belief, A25-54 refers to a Nielsen television rating for viewers aged 25 to 54.

.2 increase in late news ratings, somehow equaling an estimated business loss totaling $409,612.[5] It defies reason that any lay witness could discern the impact the alleged CFAA damage had on a morning t.v. news show ratings to a fraction of a percentage point, correcting for all other factors, based on their own perception and without the aid of scientific, technical, or other specialized knowledge and analysis. Moreover, this case is about the alleged unauthorized access to the Los Angeles Times website content management system and the changing of a few words in one paragraph on the L.A. Times site for roughly half an hour. It has nothing to do with a Sacramento television news show.

To submit this opinion evidence, the government would need an expert witness. Upon request of a defendant, the government must provide "a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Fed. R. Crim. P. 16 (a)(G). The defense provided such a request to the government on April 22, 2013. (Exhibit B, at p. 3.) The defense has yet to receive any notice or other information regarding experts who are qualified to substantiate the government's alleged loss figures, or the methods and expertise used to calculate those figures.

Although Fed. R. of Crim. P. 16 does not explicitly state a time the government must disclose in response to a request, the Advisory Committee Notes state "it is expected that the parties will make their requests and disclosures in a timely fashion." Fed. R. Crim. P. 16, advisory committee's note. The Defense submitted its request over 2 years ago. At the time of filing this motion in limine, only 19 days before trial the government has not provided notice of

---

[5] Assuming, as the above footnote does, that these decimal numbers are percentages of market revenue, the document's estimated business loss total simply does not add up. It purports an estimated business loss of $409,612.00. However, a 0.3% loss, derived from a 0.5% total morning and early news decrease offset by a 0.2% late news increase, would be $490,935.00. The basis for their loss numbers lacks foundation and a lay witness cannot meaningfully interpret these estimated loss claims.

7    Memorandum in Support of Defendant's Motions in Limine

any expert that can testify to the loss numbers even if they were relevant. Therefore, the loss numbers should be excluded in their entirety.

The court in *U.S. v. Yagi*, No. CR-12-0483 EMC, 2013 WL 10570994, at *16 (N.D. Cal. Oct. 17, 2013) excluded the introduction of new experts where defendants made their request one year before trial and the government disclosed information about its expert witness less than one month before trial. The court in *Yagi* was unpersuaded by the government's justification for their failure, that they "believed the witnesses in question could testify as lay witnesses[,]" finding that "the defense has been prejudiced in its ability to evaluate the proffered expert testimony and, if necessary, secure rebuttal witnesses to testify as to the value of a potentially diverse set of items." *See id*. The exclusion of undisclosed expert witnesses is the appropriate remedy for violation of Rule 16's disclosure requirements. *See U.S. v. W.R. Grace*, 526 F.3d 499, 514-15 (9th Cir. 2008) (upholding exclusion of such evidence even where the failure to provide notice of an expert witness was neither "willful" nor "motivated by a desire to obtain a tactical advantage).

The government has failed to timely disclose any information regarding proposed expert witnesses who could substantiate their highly speculative, non-CFAA, loss figures. As a result, it would be improper and prejudicial to the accused's fundamental right to present witnesses in his own defense to allow the government to introduce a new expert witness with days remaining before trial. Accordingly, any loss figures requiring expert testimony should not be admitted into evidence as they lack the necessary foundation.

## II. THE COURT SHOULD EXCLUDE THE "CANCERMAN EMAILS" BECAUSE THEY ARE IRRELEVANT AND PREJUDICAL

The "Cancerman emails" refer to a series of emails sent from the addresses cancerman4099@yahoo.co.uk, walterskinner@yahoo.co.uk, and foxmulder4099@yahoo.co.uk,, and possibly others, to Fox40, a Sacramento television station, employee Brandon Mercer's email address (brandon.mercer@fox40.com), as well as to email addresses registered for Fox40's iPad giveaway contest in December of 2010. These emails are irrelevant to the present case, highly prejudicial, and, to the extent they are related or probative in any way, less prejudicial alternative evidence exists to show the same set of facts. The Cancerman emails were sent, prior to the CFAA acts alleged in the Indictment, to addresses registered for a Fox40 iPad giveaway and warned the recipients that the contest was a "scam." The list of registered contestants was allegedly downloaded from the Tribune's content management system.

The government does not allege, and cannot show, that the Cancerman emails impaired or damaged any computer systems. The Cancerman emails, at most, show misuse or misappropriation of information that allegedly caused a loss of business opportunities. As discussed above, disruption to or loss of business opportunities, or other business losses, due to information misuse or misappropriation can never be used to establish loss or damage under the CFAA. *See, e.g., AtPac, Inc. v. Aptitude Solutions, Inc.*, 730 F. Supp. 2d at 1184 (E.D. Cal. 2010) ("the loss must result from the unauthorized breach itself.").

The Cancerman emails predate, and are not related to, the alleged brief editing of a paragraph on the Los Angeles Times web page, and cannot be included in the same loss calculation for CFAA purposes. Any loss that could be attributable to these emails is unrelated to the alleged editing of the L.A. Times webpage, and cannot be included in any CFAA loss amount.

Even if these emails were somehow construed as related to the alleged CFAA loss, alternative evidence exists which would be less prejudicial. Alternative evidence should be considered when evaluating the probative versus prejudicial balance of a particular piece of evidence. *See Old Chief v. U.S.*, 519 U.S. 172, 184-85 (1997). Once the court is aware of the danger of unfair prejudice under Fed. R. of Evid. 403, available substitutes must be considered as part of that analysis. *U.S. v. Merino-Balderrama*, 146 F.3d 758, 762 (1998) (citing *Old Chief v. U.S.*, 519 U.S. at 181 (1997). Any showing of loss from investigating these emails would be better demonstrated by financial documents and expert testimony, which avoid the prejudicial taint of these inflammatory emails. The substance of these emails is irrelevant to this matter, and far less prejudicial evidence exists for any relevant points which might be shown through the Cancerman emails.

## III. THE COURT SHOULD EXCLUDE ANY REFERENCE TO A PRIOR RESTRAINING ORDER AS PREJUDICIAL AND IRRELEVANT

Under Fed. R. of Evid. 404(b), the Government may attempt to introduce a restraining order issued against Mr. Keys in August 2008, over 2 years before the alleged acts in this matter, as a prior bad act. The restraining order must be excluded as it is irrelevant to any issue in this case and highly prejudicial.

The relevance of a prior bad act is determined by the application of several factors. First, sufficient evidence must be shown for a "jury to reasonably conclude that the acts occurred and that the defendant was the actor." *See Huddleston v. U.S.,* 485 U.S. 681, 689 (1988); *U.S. v. Hadley*, 918 F.2d 848, 851 (9th Cir. 1990). The 2008 restraining order was issued *ex parte*, while law enforcement investigated a series of messages and emails received by someone Mr. Keys knew. That investigation concluded without determining the source of those messages or emails,

and no evidence from that investigation or elsewhere supports the theory that Mr. Keys was involved in any way. Based on the limited evidence provided in the restraining order, it would be highly unlikely that any reasonable jury could conclude that Keys was the actor without resorting to speculation and innuendo.

Additionally, a prior bad act must be similar to the "offense charged." *See id.* The emails discussed in the restraining order hold no relationship to the charged CFAA violations. The CFAA violations at issue in this case involve misuse of login credentials to briefly alter a paragraph on a Los Angeles Times web page. The restraining order describes an unknown individual or individuals sending disruptive messages to, and posting embarrassing private photos of, an uninvolved third party. The only similarity between the prior bad act and the charged offense is the misuse of computers by unknown actors.

Even if relevant, the prejudicial impact of the restraining order vastly outweighs any probative value it may have. The court should exclude relevant evidence if the danger of unfair prejudicial impact substantially outweighs its probative value. *See U.S. v. Ramirez-Robles*, 386 F.3d 1234, 1246 (9th Cir. 2004). Given that the actions described in the 2008 restraining order were never attributed to anyone, combined with the highly scandalous nature of the allegations made therein and the lack of similarity between the acts related to the 2008 restraining order and the charged CFAA offenses, the probative value of the restraining order is entirely outweighed by its prejudicial impact. The 2008 restraining order should be excluded.

## IV. IRC LOG FILES OBTAINED FROM DENNIS OWEN COLLINS CANNOT BE AUTHENTICATED AND ARE THEREFORE INADMISSIBLE

The government may seek to introduce a number of IRC[6] chat and server log files obtained through the search and seizure of an unindicted alleged member of Anonymous, the late Dennis Owen Collins. Mr. Collins passed away on July 16, 2015.[7]

These logs include what appear to be chat records related to the alleged editing of the Los Angeles Times webpage paragraph, and server logs showing Internet Protocol addresses and nickname information that may provide identifying or location information about nicknames in relevant IRC channels (collectively "the Logs"). The Logs were stored as text files and as other files containing plain text but obfuscated, presumably by Mr. Collins, using various file names and extensions.

A proponent of a particular piece of evidence must produce evidence sufficient to show that the item is what the proponent says it is. Fed. R. Evid. 901. For admissibility, the proponent must make a prima facie showing of authenticity by showing sufficient proof for a reasonable juror to find in favor of authenticity or identification. *See U.S. v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985). For chat log data, a prima facie showing of authenticity may be made by the logs' creator testifying to how the logs were made and to the accuracy of what they represent. *U.S. v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000). As Mr. Owen died during the pendency of this trial, that is not possible.

---

[6] Internet Relay Chat, a form of internet text chat popular among programmers, computer enthusiasts, and other technically savvy individuals. Chatting on IRC takes place on "channels" run within servers. Many IRC client and server programs are able to create log files, essentially text files into which chat content or server output will be recorded, which are stored on the machine running that IRC client or server.

[7] *See* Dennis Owen Collins memorial page, at http://www.forevermissed.com/dennis-owen-collins/#about (last visited September 9, 2015).

Upon information and belief, Mr. Collins was the sole custodian of these log files between the time they were created until they were seized by federal law enforcement. He was the only person with access to and control of these files, and the only person able to testify to the accuracy of the data and content contained therein. Before the government seized the Logs, Mr. Collins or anyone else who may have had access to the Logs could have edited or changed entries in the text. Unlike email or offsite server logs, no third party exists which might independently verify the accuracy of these logs. It would also be trivially easy for an individual with Mr. Collins's technical skill to alter or obfuscate data in these files.[8]  While a law enforcement agent may be able to testify to the forensic methods used to assure the data was not altered after seizure,[9] they are in no position to authenticate the Logs' veracity prior to seizure.

## CONCLUSION

For the above stated reasons, Matthew Keys respectfully requests that the Court exclude: 1) irrelevant, speculative, and prejudicial loss numbers unrelated to the alleged Computer Fraud and Abuse Act ("CFAA") charges; 2) all loss numbers because the government has not noticed any expert that can substantiate them; 3) irrelevant and prejudicial emails allegedly sent by the defendant that are unrelated to the alleged CFAA damage and that are also inadmissible under Federal Rule of Evidence 404(b); 4) irrelevant, prejudicial evidence of a 2008 restraining order against the Defendant; and 5) chat and server logs seized from the late Dennis Owen Collins, an unindicted third party, which cannot be authenticated.

---

[8] For example, a basic find-and-replace script could easily and effortlessly change IP address numbers, nickname entries, or the creation or modification date metadata on the files.

[9] Although at this time, the defense is not aware of any such forensic verification, such as MD5 or SHA checksums, for either the Logs or the hard drive(s) on which they were stored.

DATED: September 9, 2015        Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland
Tor Ekeland, P.C.
195 Plymouth Street, 5th Floor
Brooklyn, NY 11201
tor@torekeland.com
Tel: 718-737-7264
Fax: 718-504-5147
www.torekeland.com